CRAIG MISSAKIAN (SBN 1252020)
LAW OFFICES OF CRAIG MISSAKIAN
790 E. Colorado Boulevard, 9th Floor
Pasadena, CA 91101
Telephone: (818) 802-9811
Email: Craig@cmlawpartners.com

MICHAEL ZWEIBACK (SBN 143549)
DAWN UTSUMI (SBN 247652)
ZWEIBACK, FISET & COLEMAN LLP
523 W. 6th Street, Suite 450
Los Angeles, CA 90014
Telephone: (213) 266-5170
Facsimile: (213) 289-4025
Email: Michael.Zweiback@zfclaw.com

Attorneys for Defendant
FRED MINASSIAN

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:17-cr-00480-PSG |
| Plaintiff, | **DEFENDANT FRED MINASSIAN'S** *EX PARTE* **APPLICATION TO CONTINUE TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CRAIG MISSAKIAN IN SUPPORT THEREOF** |
| v. | |
| FRED MINASSIAN | |
| Defendant. | |

TO THIS COURT AND TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

Pursuant to Central District Local Rule 7-19 and 18 U.S.C. § 3161(h)(7)(A), Defendant Fred Minassian ("Defendant" or "Mr. Minassian") hereby requests that this Court continue the trial, presently set for September 15, 2022, until January 2023, or later.

This *ex parte* application became necessary after the government produced hundreds of new document files consisting of thousands of pages of documents just about a month and a half before trial. There is simply no excuse for this late production—nor has any been offered—and even though the government believes much of it was produced previously, the defense cannot simply take its word for it. As such, this last-minute production will disrupt the defense team's trial preparation and may preclude it from making appropriate motions in time.

The government will not be prejudiced by a continuance and did not identify any such prejudice when during a phone call it said it would not agree to a continuance. Mr. Minassian, however, will be prejudiced if the Court does not continue the trial date. That is because counsel for Mr. Minassian's counsel has now had its time to prepare for trial diverted to reviewing the late-produced discovery. Moreover, the government should not be allowed to benefit from what may be a tactical decision to delay production of these documents until the eleventh hour since all of the documents appear to have been available to the government for many months and even years.

On August 8, at approximately 10:00 a.m., Defendant's counsel notified the government's counsel of Defendant's intent to file the *ex parte* application and notified the government's counsel that the government had 24 hours to file an opposition. The government's counsel had previously indicated that they would oppose any application to continue the trial. Contact information for the government's lead counsel is as follows:

1

DEFENDANT'S *EX PARTE* APPLICATION TO CONTINUE TRIAL

1  Brittney M. Harris
2  Email: Brittney.Harris@usdoj.gov

3  Jehan M. Pernas
4  Email: Jehan.Pernas@usdoj.gov

|  |  |
|---|---|
| DATED: August 8, 2022 | Respectfully submitted, |
|  | LAW OFFICES OF CRAIG MISSAKIAN |
|  |  |
|  | __/s/Craig Missakian_____ |
|  | Craig H. Missakian |
|  | Attorneys for Defendant |
|  | FRED MINASSIAN |
|  |  |
| DATED: August 8, 2022 | ZWEIBACK, FISET & COLEMAN LLP |
|  |  |
|  | __/s/Michael Zweiback_____ |
|  | Michael Zweiback |
|  | Attorneys for Defendant |
|  | FRED MINASSIAN |

2
DEFENDANT'S *EX PARTE* APPLICATION TO CONTINUE TRIAL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On July 28, 2022—just a month and a half before trial—the government produced 211 files consisting of 2,395 pages of new discovery. During a meet and confer about motions *in limine*, the government lawyers asked if the defense had any questions about the newly produced material. The defense had just one: Why did the government produce the discovery so late? The prosecutors responded that "they had inherited the case"—seeming to suggest that they should not be blamed because the previous lawyers had not produced the material in a timely fashion. Regardless of who is to blame, the defendant should not be prejudiced by the government's eleventh-hour production. That is especially true where, it appears, much of the material could have and should have been produced months or even years earlier.

Although the government has already suggested that it believes some of the material was already produced or that it falls outside the scope of their discovery obligations, the defense cannot simply accept these representations and move on. Rather, it must now divert its attention from trial preparation to reviewing the late-produced discovery. The defense may also disagree with the government's assessment of what falls inside and outside of its Rule 16 discovery obligations. To make matters worse, many of the documents are redacted making it impossible for the defense to understand them fully let alone incorporate them into its document management database. The government has refused to produce unredacted copies of documents—even though a protective order is in place—but rather insists that the defense lawyers only review them in person at the USAO. This unnecessary requirement makes review of the new material even more cumbersome, disruptive, and time consuming.

Whether the late production was done for tactical reasons or innocently as the government suggests, the fact remains that the defense needs more time to sift through this information, analyze it, and, if necessary, make appropriate motions in

response to it. It will be impossible to do that with the current trial date. The defendant should not be forced to choose between a thorough review of the newly-produced information and preparing for trial; due process and fundamental fairness means that he should be able to do both. And since there will be no prejudice to the government from a reasonable delay, the defense respectfully requests that the Court continue the trial.

## II.  SUMMARY OF RELEVANT FACTS

On July 28, 2022, without warning, the defense received a discovery disclosure letter that provided in relevant part as follows:

> Dear Counsel:
>
> Pursuant to your request for discovery, I am making available via USAfx discovery Bates numbers 46577-48818 and 48875-48964. Some items contained in this discovery and this discovery letter are subject to the protective order. Please note this discovery is only available for sixty (60) days please make efforts to download it as soon as possible.
>
> <u>Subject to Protective Order Discovery</u>
>
> • DOMEX PhaseII (Bates 46577-48003)
> • SA Analysis Copies (Bates 48004-48006)
> • Memorandum (Bates 48007)
>
> <u>Standard Discovery</u>
>
> • DEA Rpts (Bates 48008-48143)
> • DHHS Reports (Bates 48144-48159
> • Lab Reports (Bates 48160-48387)
> • Manning Tolls (Bates 48388-48454)
> • Minassian Tolls (Bates 48455-777)
> • Misc (Bates 48778-817)
> • Surv Text Screenshots (Bates 48818)
>
> <u>Defendant-Specific Discovery Subject to Protective Order</u>
>
> • Cooperator 1 (Bates 48875-48956)
> • DEA6_Witness 1 Proffer 9.29.17 (Bates 48957-963)

Defendant-Specific Discovery

• Minassian Takedown Interview (Bates 48964)

(Declaration of Craig H. Missakian ("Missakian Decl."), Ex. A.)

Obviously aware that the production coming so close to trial was late, the government followed up the next day with an email intended to minimize what it had done. It read as follows:

> Craig and Mike,
>
> To give you a bit more detail on this discovery disclosure, we wanted to point out that the documents at Bates 46577 through 48007 are likely not relevant to the case against Minassian and outside the scope of our discovery obligations, but we produced them out of an abundance of caution. We do not plan to use any of those items at trial, and in the event that that changes, we will give you advanced notice. Additionally, some of these items are duplicates of items that have been previously produced.
>
> There is also a set of wire monitor notes that reference Minassian at Bates 48784 through 89. Jehan and I only recently came across these notes and it is our understanding that these are the totality of the notes for the wires in this case. It is our understanding that these notes pertain to calls that transpired during the third wiretap in this investigation. In other words, the wiretap authorized on or about August 22, 2016, not the wiretap through which the calls with Minassian were intercepted and included in the charges against him, as those calls took place between May and July 2016.
>
> Finally, we would like to reiterate that we do not intend to call as a witness to testify at trial the individual identified as "Witness 1" in the discovery. I think you know who "Witness 1" is, but if not, we can disclose the name during our call on Tuesday.
>
> We are happy to discuss the above or anything related to this discovery production during our call Tuesday.

(Missakian Decl., Ex. B.)

It is irrelevant that the government believes the new material (identified as Bates Nos. Bates 46577 through 48007) "are likely not relevant to the case against Minassian" or that it does not plan to use the material at trial. It is also irrelevant that

3
DEFENDANT'S *EX PARTE* APPLICATION TO CONTINUE TRIAL

the government just disclosed a proffer statement from "Witness 1," who has not been identified, but claims it does not intend to use the witness at trial. It is irrelevant because the justifications beg the obvious point: There are two sides in this case, and it is not for the government to decide what is and what is not relevant to the defense. The defense may wish to use the material or call the witness even if the government does not. Moreover, the defense is entitled to make its own independent assessment of whether the material fell within "the scope of [the government's] discovery obligations" and, if warranted, make a motion for violation of Rule 16. The government's late production, however, makes that and other possible motions all but impossible.

Similarly, the email is pregnant with the possibility the government waited until the last minute to review the material it had in its possession. For example, the email does not say definitively that all wire monitor notes have now been produced. Rather, it says that "Jehan and I only recently *came across* these notes and *it is our understanding* that these are the totality of the notes." "Our understanding?" Based on what? Moreover, why did the prosecutors "only recently [come] across" information that is potentially so important and clearly within Rule 16—and that should have been produced years ago. There should be some explanation. Virtually the entire case against Mr. Minassian depends on the wire intercepts. In fact, without them it is highly unlikely the case against him would have ever been filed at all. The notes relating to those intercepts are, it goes without saying, potentially critical. That is even more so here where the government failed to use a taint team when intercepting and listening to calls that even it believed were attorney-client privileged.

## II. ARGUMENT

### A. The Court May Grant a Continuance and Exclude the Resulting Delay Under the "Ends Of Justice" Provisions of the Speedy Trial Act

"The Speedy Trial Act requires that trial begin within 70 days of the latest indictment, information, or appearance"—in this case, January 24, 2020. *Henderson v. United States,* 476 U.S. 321, 323 (1986) (citing 18 U.S.C. § 3161(c)(1)). To provide the necessary flexibility to accommodate pretrial proceedings that result in justifiable delay, the Speedy Trial Act excludes from the 70-day clock certain periods of time. *See* 18 U.S.C. § 3161(h)(1)-(8). The "ends of justice" provision of the Speedy Trial Act excludes "[a]ny period of delay resulting from a continuance if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id*., § 3161(h)(7)(A). 3161(h)(7)(A). The factors, among others, that a court must consider in deciding whether to grant a continuance under this section are:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
> . . . .
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B).

"Excludability under [§ 3161(h)(7)(A)] is not automatic; the period of delay must be 'reasonable.' " *United States v. Hall,* 181 F.3d 1057, 1062 (9th Cir. 1999)

(citing *Henderson v. United States*, 476 U.S. 321, 326–27 (1986)). The court "gauge[s] the reasonableness of delay on a case by case basis, given the fact-bound nature of the inquiry." *United States v. Lewis*, 611 F.3d 1172, 1177 (9th Cir. 2010) (quoting *United States v. Messer*, 197 F.3d 330, 337 (9th Cir. 1999)).

### B. Given the Late Discovery Production of Discovery so Close to Trial, a Continuance Would Ensure Mr. Minassian Receives a Fair Trial

Throughout this case, the government has suggested that the case against Mr. Minassian is ironclad and that he knowingly took part in an effort to help conceal a narcotics trafficking conspiracy. But in so doing the government has attempted to cabin the case against Mr. Minassian in an overly narrow way that—at least in its mind—makes its discovery obligations overly narrow as well. It did so again here when it attempted to justify the late production by claiming the material is "not relevant" to the claims against him but rather produced out of an "abundance of caution." At this point, the defense simply does not know whether that is true or not. What is does know, however, is that it cannot simply take the government's word for it. The defense does not have that luxury.

In reality, the case is neither ironclad nor narrow. In fact, just the opposite is true in that the government alleges that Mr. Minassian knowingly aided and abetted a complex, multi-party conspiracy spanning three counties and involving sham medical clinics, corrupt doctors, fraudulent prescriptions and black-market customers. *Cf. Barker v. Wingo*, 407 U.S. 514, 530-31 (1972) ("the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). The original indictment alleged nineteen separate counts against thirteen different defendants. In the first superseding indictment, Defendant has been charged with six counts for his alleged involvement in this scheme. A complex case such as this requires extensive preparation and dropping thousands of pages of documents on Defendant's counsel at the last minute—besides being improper—makes that virtually impossible.

The government's discovery production, which covers the entire alleged conspiracy, is voluminous and the latest production makes it even more so. It includes many wiretap interceptions and related wiretap pleadings; thousands of Bates-stamped items including prescription drug history reports containing thousands of records, spreadsheets containing tens of thousands of entries of prescription records, law enforcement reports, and images and videos captured during the investigation; copies of seized evidence, thousands of pages of financial records, and undercover recordings from the investigation; subpoenaed bank records and updated law enforcement report; certain cooperator materials, and call transcripts; and extracted digital evidence obtained during the takedown in this matter. Altogether, to date, the government has now produced what appears to be at least 50,000 pages of Bates numbered discovery and thousands of files.

Defendant's counsel have been diligent in reviewing the discovery, which has thus far included one trip to the U.S. Attorney's Office to review redacted material that should have been produced in unredacted form long ago. Now, with the latest production, counsel needs more to review the new discovery and should not be forced to choose between doing that and preparing for trial. As such, failure to grant the continuance would deny them the time necessary for effective preparation, taking into account their exercise of due diligence. That is especially true where there will be no prejudice to the government or its case and the reason for the request is their own—so far-unexplained—late production. As noted above, this is a case where the bulk of the evidence against Mr. Minassian is recorded and where it does not appear that the government intends to call very many witnesses. As such, the risk of a witness memory fading, for example, having an adverse impact on its case is low. By contrast, the prejudice to Mr. Minassian and his defense is real.

The defense request to continue the case to January 2023 is driven primarily by the fact that the defense lawyers have other previously-scheduled trials and other case-related commitments. Craig Missakian has week-long trials scheduled for

October 17, 2022 in *Petrosyan v. Allahverdian*, No. BC669012 (LA Cty Super. Ct.): *Sturgeon v. Coccia*, No. 22-2282-DRC (ADR Services, Inc. Arbitration); and *Cybersale International, Inc. v. Anji Logistics America Holdings, Inc.*, No. CIVDS21013388 (Riv. Cty Super. Ct.) Defendant's second counsel, Michael Zweiback, is also likely to be out of the country for much of the remaining year after late September or early October. He is lead counsel in *United States v. Julio Herrera, et al.*, No. 22-342 (ADC) (Dist. of Puerto Rico). The case has only been recently (August 4, 2022) indicted but Mr. Zweiback's client resides in the UK. While no dates have been set, he understands from his UK counsel counterparts to expect substantial extradition proceedings beginning in and about late September or early October that will require him to be in London for several months throughout the foreign court process.

In light of these other upcoming cases, a longer-than-normal delay is reasonable given the complex nature of this prosecution, the charges in the indictment, and the voluminous discovery produced, including the late production. *See Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992) (stating that the significance of any delay necessarily "[d]epend[s] on the nature of the charges"). In light of these circumstances, Defendant's counsel will not have the time they need to prepare to try this case under the current trial date and a continuance to January 2023 or later will allow counsel the additional time needed to prepare.

### III. CONCLUSION

For the reasons discussed, Mr. Minassian respectfully requests that the Court grant this *ex parte* application and continue his trial to January 2023 or later.

Dated: August 8, 2022

Respectfully submitted,
LAW OFFICES OF CRAIG MISSAKIAN

__/s/Craig Missakian_____
Craig H. Missakian

ZWEIBACK, FISET & COLEMAN LLP

__/s/Michael Zweiback_____
Michael Zweiback
Attorneys for Defendant
FRED MINASSIAN

## DECLARATION OF CRAIG MISSAKIAN

I, Craig Missakian, declare as follows:

1.  I am an attorney at law licensed to practice before all the Courts of the State of California and admitted to practice before the bar of this Court. I along with Michael Zweiback am counsel of record for Defendant Fred Minassian in this case. If called as a witness, I would and could competently testify to the facts stated below.

2.  My co-counsel and I have been diligent in reviewing the voluminous discovery produced by the government in this case. We did not expect, however, to receive another voluminous production from the government so close to trial and now seek additional time to review that material, prepare for trial, and make any necessary motions based on the new production.

3.  The new production began with a letter we received from one of the prosecutors, Brittney Harris, on July 28, 2022. A true and correct copy of that letter is attached hereto and marked as Exhibit A. Ms. Harris followed up with an email on July 29, 2022, a true and correct copy of which is attached hereto and marked as Exhibit B.

4.  Mr. Zweiback and I spoke to Ms. Harris and her co-counsel, Jehan Pernas, on Tuesday, August 2, 2022. The purpose of the meeting was to meet and confer about potential motions *in limine*. At the outset of the conversation, however, one of the prosecutors asked if we had any questions about the latest discovery production. I asked why had it been produced so late. I believe it was Ms. Pernas (although it may have been Ms. Harris) who gave as an excuse that they had "inherited" the case. Later, when we asked whether the government would stipulate to a continuance of the trial in light of the late production, they said "no."

Ordinarily, in a situation like this a one- or two-month continuance might suffice (although not having had a chance to fully review the new discovery I cannot say for certain). But I have other upcoming trials that necessitate requesting a longer

continuance. Specifically, I have what I expect will be week-long trials scheduled for October 17, 2022 in *Petrosyan v. Allahverdian*, No. BC669012 (LA Cty Super. Ct.): *Sturgeon v. Coccia*, No. 22-2282-DRC (ADR Services, Inc. Arbitration); and *Cybersale International, Inc. v. Anji Logistics America Holdings, Inc.*, No. CIVDS21013388 (Riv. Cty Super. Ct.) My co-counsel, Michael Zweiback, is also likely to be out of the country beginning late September or early October. As I understand it, he is lead counsel in *United States v. Julio Herrera, et al.*, No. (Dist. of Puerto Rico). The case has only been recently (August 4, 2022) indicted but Mr. Zweiback's client resides in the UK. While no dates have been set, he understands from his UK counsel counterparts to expect substantial extradition proceedings beginning in and about late September or early October that will require him to be in London for several months throughout the foreign court process.

5. On August 8, 2022 at approximately 1:20 p.m., I gave the government's counsel notice of this *ex parte* application by email. I also notified them that the government had until 3:00 p.m. August 9, 2022 to file an opposition. The government previously indicated that they would oppose a request to continue the trial. Attached hereto and marked as Exhibit C is a true and correct copy of the email I sent to Ms. Harris and Ms. Pernas giving them notice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 8th day of August 2022, at Pasadena, California.

                                                __/s/Craig Missakian_____
                                                Craig H. Missakian



## United States Department of Justice

### United States Attorney's Office
### Central District of California

---

*Brittney M. Harris and Jehan M. Pernas*  
*Phone:  (213) 894-0488/0319*  
*E-mail:  Brittney.Harris@usdoj.gov; Jehan.Pernas@usdoj.gov*

*1400 United States Courthouse*  
*312 North Spring Street*  
*Los Angeles, California  90012*

July 28, 2022

**VIA USAfx**

Craig Missakian  
Law Offices of Craig Missakian  
790 E. Colorado Blvd.  
Suite 900  
Pasadena, CA  91101

    Re:    United States v. Minassian, CR No. 17-480-PSG

Dear Counsel:

Pursuant to your request for discovery, I am making available via USAfx discovery Bates numbers  46577-48818 and 48875-48964.   Some items contained in this discovery and this discovery letter are subject to the protective order.   Please note this discovery is only available for sixty (60) days please make efforts to download it as soon as possible.

**Subject to Protective Order Discovery**

- DOMEX PhaseII (Bates 46577-48003)
- SA Analysis Copies (Bates 48004-48006)
- Memorandum (Bates 48007)

**Standard Discovery**

- DEA Rpts (Bates 48008-48143)
- DHHS Reports (Bates 48144-48159
- Lab Reports (Bates 48160-48387)
- Manning Tolls (Bates 48388-48454)
- Minassian Tolls (Bates 48455-777)
- Misc (Bates 48778-817)
- Surv Text Screenshots (Bates 48818)

EXHBIT A

RE: U.S. v. Minassian, CR No. 17-480-PSG
July 28, 2022
Page 2

**Defendant-Specific Discovery Subject to Protective Order**

- Cooperator 1 (Bates 48875-48956)
- DEA6_Witness 1 Proffer 9.29.17 (Bates 48957-963)

**Defendant-Specific Discovery**

- Minassian Takedown Interview (Bates 48964)

The government will be happy to discuss this discovery production and arrangements for future discovery productions, if any, at a Rule 16.1 discovery conference. Please contact me to schedule a meeting.

The government will make available for your inspection any item of evidence referred to above, as well as any other evidence seized from your client and/or which the government intends to offer in its case-in-chief. Please contact me to arrange a mutually convenient time for your inspection of such items.

The government will produce to you any additional Jencks material—including any relevant grand jury transcripts, assuming a Rule 6(e) order has been issued—one week before trial if you agree to the production of reciprocal Jencks material at that time or affirmatively represent that you have no Jencks material to produce. Please inform me whether such an arrangement is acceptable to you.

The government also hereby gives notice that it may seek to introduce the other crimes, wrongs, or acts committed by your client which are referenced in the enclosed items pursuant to Rules 404(b), 608, and/or 609 of the Federal Rules of Evidence, or on the theory that they are inextricably intertwined with the charged conduct. Please contact me if you believe this notice is insufficient.

The enclosed materials and any future discovery provided to you that may exceed the scope of discovery mandated by the Federal Rules of Criminal Procedure, federal statute, or relevant case law are provided voluntarily and solely as a matter of discretion. By producing such materials to you, the government does not waive its right to object to any future discovery requests beyond the ambit of its legal obligations.

With this letter the government requests all reciprocal discovery to which it is entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure. The government also requests notice of any intention of your client to rely on an entrapment defense, or a defense involving mental condition or duress, and/or an alibi defense. Pursuant to Federal Rule of Criminal Procedure 12.1, the dates, times, and places of the charged offenses are detailed within the documents included within the discovery. Please contact me immediately if you believe that this notice is insufficient.

RE: U.S. v. Minassian, CR No. 17-480-PSG
July 28, 2022
Page 3

Please let me know if you have any questions, or would like to further discuss any of the matters raised above.

Very truly yours,

*Brittney Harris*

BRITTNEY M. HARRIS
JEHAN M. PERNAS
Assistant United States Attorneys
International Narcotics, Money Laundering,
and Racketeering, Section


Enclosures

| | |
|---|---|
| **Subject:** | RE: United States v. Minassian, CR 17-480-PSG |
| **Date:** | Friday, July 29, 2022 at 10:20:26 AM Pacific Daylight Time |
| **From:** | Harris, Brittney (USACAC) 1 |
| **To:** | Craig Missakian, Michael.Zweiback@zfclaw.com |
| **CC:** | Pernas, Jehan (USACAC) |
| **Attachments:** | image001.png |

Craig and Mike,

To give you a bit more detail on this discovery disclosure, we wanted to point out that the documents at Bates 46577 through 48007 are likely not relevant to the case against Minassian and outside the scope of our discovery obligations, but we produced them out of an abundance of caution. We do not plan to use any of those items at trial, and in the event that that changes, we will give you advanced notice. Additionally, some of these items are duplicates of items that have been previously produced.

There is also a set of wire monitor notes that reference Minassian at Bates 48784 through 89. Jehan and I only recently came across these notes and it is our understanding that these are the totality of the notes for the wires in this case. It is our understanding that these notes pertain to calls that transpired during the third wiretap in this investigation. In other words, the wiretap authorized on or about August 22, 2016, not the wiretap through which the calls with Minassian were intercepted and included in the charges against him, as those calls took place between May and July 2016.

Finally, we would like to reiterate that we do not intend to call as a witness to testify at trial the individual identified as "Witness 1" in the discovery. I think you know who "Witness 1" is, but if not, we can disclose the name during our call on Tuesday.

We are happy to discuss the above or anything related to this discovery production during our call Tuesday.

Best,

Brittney

**Brittney M. Harris | Assistant United States Attorney**
Deputy Chief, International Narcotics, Money Laundering, and Racketeering Section
United States Attorney's Office | Central District of California
312 N. Spring St. | Los Angeles, California 90012
T: 213.894.0488| F: 213.894.0141 | Brittney.Harris@usdoj.gov

---

**From:** Guzman, Judee M. (USACAC) <jguzman1@usa.doj.gov>
**Sent:** Thursday, July 28, 2022 7:06 PM
**To:** craig@cmlawpartners.com; Michael.Zweiback@zfclaw.com
**Cc:** Harris, Brittney (USACAC) 1 <BHarris1@usa.doj.gov>; Pernas, Jehan (USACAC) <JPernas@usa.doj.gov>; Barajas, Veronica (USACAC) <VBarajas@usa.doj.gov>
**Subject:** United States v. Minassian, CR 17-480-PSG

EXHBIT B

Dear Counsel: Attached is the discovery letter for today's production, which will be produced via USAfx.  The discovery will only be available for **60 days**, please make efforts to download it as soon as possible.  Please note, you will be receiving an invite via email re: invitation to view the above subject discovery.  Please accept it.

Thank you and have a wonderful day.

Judee



**Judee Guzman | Supervisor Paralegal Specialist**
International Narcotics, Money Laundering and Racketeering Section
United States Attorney's Office | Central District of California
1400 U.S. Courthouse | 312 N. Spring St. | Los Angeles, California 90012
T: 213.894.8651| F: 213.894.0142  |Judee.M.Guzman@usdoj.gov

CONFIDENTIALITY NOTE: This communication contains information belonging to the **UNITED STATES DEPARTMENT OF JUSTICE**, which is confidential. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of said information is strictly prohibited. If you have received this communication by error, please delete it from your computer and notify us immediately.

| | |
|---|---|
| **Subject:** | US v. Minassian |
| **Date:** | Monday, August 8, 2022 at 1:19:00 PM Pacific Daylight Time |
| **From:** | Craig Missakian |
| **To:** | Pernas, Jehan (USACAC), Harris, Brittney (USACAC) 1 |
| **CC:** | Michael Zweiback |
| **Attachments:** | image001.jpg |

Brittney and Jehan,

As we mentioned in our last call, Mr. Minassian is applying *ex parte* to continue the trial. I anticipate filing the application within the next hour. You have until tomorrow at 3:00 p.m. to submit your opposition but I will note your opposition in the application as well.

Craig



790 E. Colorado Blvd., Suite 900, Pasadena CA 91101 | cmlawpartners.com
craig@cmlawpartners.com | 818.802.9811

EXHIBIT C