E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BRITTNEY M. HARRIS (Cal. Bar No. 294650)
JEHAN M. PERNAS (Cal. Bar No. 320584)
Assistant United States Attorneys
Deputy Chief, International Narcotics,
Money Laundering, and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0488
     Facsimile: (213) 894-0141
     E-mail:    Brittney.Harris@usdoj.gov
                Jehan.Pernas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FRED MINASSIAN, <br><br> Defendant. | No. CR 17-CR-480-PSG-6 <br><br> <u>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE RECORDING OF CALL WITH LAW ENFORCEMENT UNDER FEDERAL RULE OF EVIDENCE 403</u> <br><br> Hearing Date: 2/16/23 <br> Hearing Time: 10:30 a.m. <br> Location:    Courtroom of the <br>              Hon. Phillip S. <br>              Gutierrez |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jehan M. Pernas and Brittney M. Harris, hereby files its opposition to defendant's motion *in limine*.

///

///

///

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 16, 2023           Respectfully submitted,

                                          E. MARTIN ESTRADA
                                          United States Attorney

                                          MACK E. JENKINS
                                          Assistant United States Attorney
                                          Chief, Criminal Division

                                                /s/
                                          BRITTNEY M. HARRIS
                                          JEHAN M. PERNAS
                                          Assistant United States Attorneys

                                          Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant's motion *in limine* to exclude a July 6th call between defendant and the undercover officer on Rule 403 grounds is meritless.[1] Although defendant's motion does not clearly specify which of the two July 6th calls he is seeking to exclude, these calls are highly probative and squarely admissible, as they form the basis for two of the charges against defendant: counts two and five. Moreover, both are admissible under Rule 403, as they do not mislead the jury or confuse the issues because California Business and Professions Code § 6068(e)(1) does not permit lawyers to lie to law enforcement. Defendant is attempting to create confusion on this issue by arguing that his duties as a defense attorney are what led him to lie to law enforcement during the July 6th calls. This argument is absurd; no one – not even lawyers – are legally permitted to lie to law enforcement officers. If defendant felt that he could not have spoken to Detective Davidson without divulging client confidences, he could have simply said so during his conversation, or remained silent. Instead, defendant affirmatively chose to lie; his lies were not even in response to any questions asked by the detective. Now defendant is attempting to use the attorney-client privilege and California Business and Professions Code § 6068 as a

---

[1] There were two recorded calls between defendant and Detective Davidson on July 6. The government believes that defendant is solely referring to the call on July 6, 2016 at 4:35 p.m. (See Def. Mot. at 3, referencing Det. Davidson call that happened right after Matosyan told defendant that the government knew the doctor's letter was fraudulent.) Both calls are discussed in the government's response to provide context.

shield, to protect him from his own illegal actions.  Defendant's motion should be denied.

**II.   Statement of Facts**

    **A.   Summary of July 6th Calls**

A more fulsome statement of facts is provided in the government's opposition to defendant's second motion to suppress three wiretap calls, filed on January 16, 2023.  (See Dkt. 758, Gov't Opp., at 3-11.)  Below the focus is primarily on the two July 6th calls between Detective Davidson and Minassian.

On July 6, 2016 at 4:35 p.m., Detective Davidson (posing as CHP Officer Weilbacher) called defendant.  (Declaration of Jehan M. Pernas ("Decl."), Ex. 4.)  At the outset of the call, the detective informed defendant that Dr. Dzebolo denied writing the letter that had been faxed to law enforcement.  (Id. at 3.)  Even though defendant had already spoken with Matosyan and learned this information, defendant feigned surprise.  (See Gov't Opp., at 10.)  Defendant said, "Oh my God, are you kidding me?"  Defendant asked if the detective would allow F. Manning to self-surrender and the detective said he had further investigation to do because fraud was involved.  (Decl., Ex. 4.)  Without a question by the detective pending, defendant volunteered, falsely, "[t]he letter was given to me, I thought it's-, I mean, I can't follow-up on everything that a client gives to me. . . . The way he explained it to me is that . . . 'I have this doctor, I have this prescription, it's all good.' I said, 'Okay. I talked to the officer. It seems like a pretty clear cut situation. Just gi, give me a le, get me a letter from your doctor."  (Decl., Ex. 4 at 3-4.)

2

Immediately after defendant's call with Detective Davidson, defendant called Matosyan at 4:37 p.m., reported the call he just had with the detective, and they discussed how to respond.  (See Gov't Opp., at 10-11.)  In their strategy discussion, they discussed whether they could persuade Dr. Dzebolo to contact the officer and retract his prior statement that the letter was fraudulent.  (Id.) Matosyan said, "I'll try to see if we can bribe this doctor, but I don't know."  (Id.)  Defendant responded, "Okay, alright." (Id.)

At 4:55 p.m., defendant and Detective Davidson spoke again. (Decl., Ex. 5.)  During this call, the detective asked defendant the name of the person who supposedly dropped off the fake doctor's letter at defendant's office.  (Id.)  Defendant responded and then immediately asked again if he could have F. Manning self-surrender, to which the detective said absolutely.  (Id.)  Then, without being prompted by the detective, defendant lied, falsely claiming that he believed the letter was legitimate: "I hope you understand that when I get a letter, I'm assuming the letter is genuine, and I sent it over . . . I can't really call and, and and and verify that.  I'm assuming what I'm getting from a client is, is, is a genuine letter." (Id. at 3.)  Defendant, once again, volunteered this information, it was not in response to a question. (Id.)

### B.   First Superseding Indictment

Defendant is charged with five crimes, all of which concern defendant's involvement in covering up an illicit pill transaction between his co-conspirators.  Two of the charges against defendant are directly founded on the July 6 calls. Specifically, Count Two charges defendant with conspiracy to (1) falsify and conceal a material fact, (2) make a false statement or representation, (3)

3

making a false writing, (4) witness tampering, and (5) falsification of records. Overt Act (v) to Count Two specifically concerns these two July 6th calls. In addition, the second July 6th call is the foundation for Count Five, which charges defendant with falsely claiming to the detective that he believed the letter accurately stated that F. Manning had been treated by N.D. on May 10, 2016, when, in fact, as defendant then knew, the letter falsely represented that F. Manning had been treated by N.D. on that date.

**III. Defendant's Rule 403 Argument Is Meritless**

The July 6th calls should not be excluded under Federal Rule of Evidence 403 because they are highly probative, and indeed form the basis for two of the charges against defendant. Furthermore, their probative value is not substantially outweighed by a danger that the jury would be confused due to defendant's profession as an attorney. Simply put, there is no legal authority, including California Business and Professions Code § 6068(e)(1), that permitted defendant, as an attorney, to lie to a law enforcement officer.

The Ninth Circuit has noted repeatedly that Rule 403 "favors admissibility" and that exclusion of evidence under Rule 403 is an "extraordinary remedy to be used sparingly." United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000). If relevant evidence is otherwise admissible, the Court may exclude it only "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As the Court articulated in Hankey:

> Relevant evidence is inherently prejudicial . . . Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be

4

>     cautious and sparing.  Its major function is limited to
>     excluding matter of scant or cumulative probative force, dragged
>     in by the heels for the sake of its prejudicial effect.
>     <u>Hankey</u>, 203 F.3d at 1172 (internal quotation and citation
>     omitted).

The probative value of the July 6, 2016 calls is undeniable; in context with the other wire calls, they provide proof of the conspiracy charged in Count Two, and the second July 6 call forms the basis for the charge in Count Five, namely defendant's false statement to a law enforcement officer.  During the first July 6 call at 4:35 p.m., defendant acted shocked that the doctor's note was fraudulent, and told Detective Davidson that he had no idea the doctor's letter was fake.  About a minute after this call ended, defendant called his co-conspirator Matosyan and they attempted to determine whether there was a way out of the tangled mess they landed themselves in.  When Matosyan said "I'll, I'll try to see, if we can bribe this doctor, but I don't know," defendant responded, "Okay, alright."  (<u>See</u> Gov't Opp, at 11.)  Then, defendant called Detective Davidson a few minutes later at 4:55 p.m., and again, repeated his self-serving lie – that he assumed when he got a letter from his client, that "the letter [was] genuine," and he protested that he would never fax over a forged letter to the government.  While both July 6th calls are relevant to proving Count Five (particularly because defendant repeats the same lie), it is the second July 6th call which is the <u>basis</u> of the false statements charge in Count Five, not the first, as defendant mistakenly asserts.  (Def. Mot. at 3.)

Additionally, defendant cannot demonstrate that admission of the July 6th call at 4:35 p.m. would "confuse the issues" or "mislead the jury."  Defendant essentially attempts to argue that his duties as a defense attorney are the reason he made his false statements to

5

Detective Davidson.  As a threshold matter, California Rule of Professional Conduct 1.2.1 squarely holds attorneys to the contrary: "A lawyer shall not counsel a client to engage, or assist a client in conduct that the lawyer knows is criminal, fraudulent, or a violation of any law, rule, or ruling of a tribunal."  Not only did defendant violate professional rules by conspiring with his co-defendants to cover up the illegitimacy of pills that law enforcement seized, he committed federal crimes while doing it.

Defendant's entire motion for exclusion rests on a false dilemma: that he only had two choices when he was "surprised" by the call from the undercover officer at 4:35 p.m. – either (1) "tell the truth and help the government convict Manning, violate his duties as a lawyer and potentially be disbarred," or (2) "protect his client's secret, get prosecuted himself, and be disbarred."  (Def. Mot. at 1.) This obviously ignores two other reasonable options, which should be readily apparent to a seasoned defense attorney such as defendant: assert the attorney-client privilege or remain silent.  After Detective Davidson told defendant that F. Manning was likely looking at "some sort of fraud charges," all defendant had to do was remain silent or, if he felt the need to say something, then assert the attorney-client privilege. (Decl., Ex. 4 at 3.)  Defendant did neither, instead he volunteered self-serving lies and is now attempting to justify them through a misguided interpretation of California Business and Professions § 6068(e)(1).  Contrary to defendant's assertion, § 6068(e)(1) did not hamstring him in any way. Section 6068(e)(1) only requires that a lawyer maintain the confidences of his client, which defendant could have satisfied by remaining silent or informing the detective that he could not

elaborate further due to his professional obligations to his client, F. Manning.  Defendant, instead, chose to volunteer lies to the detective in an effort to shield his own criminal involvement.

There is no dilemma, and defendant was not caught between a rock and a hard place.  Defendant simply violated the law.  Consequently, neither the Sixth Amendment, nor California Business and Professions § 6068(e)(1) are applicable, and they cannot save the defendant from his own illegal conduct.[2]

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion.

---

[2] Defendant argues that another potential remedy is providing jury instructions that explain a lawyer's ethical duties.  At this time, the government opposes § 6068(e)(1) as a jury instruction, on the grounds that it does not apply in a situation where defendant, unprompted, volunteered lies to the government in order to save himself.  Regardless, the government will respond more fulsomely to any jury instructions defendant may propose during the jury instruction submission process outlined in the Court's order (Dkt. 734 at 7-8.)

7